USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-4-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HIRAM ZAMUDIO-BERGES,                      :
                                           :
                            Movant,        :        REPORT AND
                                           :        RECOMMENDATION
                  - against -              :
                                           :        08 Civ. 8789 (RO) (RLE)
UNITED STATES OF AMERICA,                  :
                                           :
                            Respondent.    :

To the HONORABLE RICHARD OWEN, U.S.D.J.:

## I. INTRODUCTION

*Pro se* Petitioner Hiram Zamudio-Berges, moves to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255.  On July 14, 2005, Zamudio-Berges was sentenced to

360 months' imprisonment after pleading guilty to one count of conspiring to possess with intent

to distribute cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A).  In his 250-page

Motion, Zamudio-Berges asserts myriad claims challenging the constitutionality of his arrest,

prosecution, guilty plea, and sentence.  (*See* Zamudio-Berges's Mot. Pursuant to 28 U.S.C.

§ 2255 ("Mot.").)  For the following reasons, I recommend that the motion be **DENIED**.

## II. BACKGROUND

### A. The Arrest and Investigation

Sometime in April 2001, Zamudio-Berges entered the United States from Mexico using

false identity documents.  (Resp't's Appendix of Exhibits ("RA"), Ex. A. ¶ 10.)  Law

enforcement officials learned from a cooperating witness ("CW") that Zamudio-Berges intended

to deliver fifty kilograms of cocaine worth approximately $1 million to a customer in midtown

Manhattan.  (RA, Ex. B at 2.)  During a series of recorded telephone conversations with the CW

on April 30, 2001, Zamudio-Berges made arrangements to meet the CW the following day to

deliver "50 pesitos" (RA, Ex. C), which he later admitted meant fifty kilograms of drugs. (RA, Ex. D at 2.)

On May 1, 2001, law enforcement agents set up surveillance at the location of the proposed meeting, and observed Zamudio-Berges meet the CW, and get into the CW's car. (RA, Ex. E at 1.) After the CW exited the car, Zamudio-Berges drove around the block and stopped. (*Id.*) Three minutes later, Zamudio-Berges started moving again, and two minivans, one gray and one green, started following him. (*Id.* at 2.) It was later determined that Cesar Gil and Luis Rocha were driving the minivans. (*Id.*) Law enforcement agents followed the cars for fifteen minutes, and noticed that they would at times drive slower than the flow of traffic, and would at other times start and stop quickly. (RA, Ex. A ¶ 9.) A license plate check on the green minivan revealed that it did not have valid license plates. (RA, Ex. E at 2.) After the vehicles stopped, Drug Enforcement Administration (DEA) agents and police officers approached the cars and received consent from Gil to search the green minivan. (*Id.*)

From the van, agents recovered two loaded firearms, extra ammunition, holsters, and a security badge, which were all hidden behind the glove compartment. (*Id.* at 2) On Zamudio-Berges, they found, among other things, several identification documents, including a Mexican passport in the name of Hiram Zamudio-Berges and bearing a United States visa; a Mexican driver's license in the same name; and a Michigan driver's license bearing Zamudio-Berges's photograph but under the name "Fernando Mejia-Mares." (RA, Exs. E at 3, F.) He also had two room keys for a Days Inn Hotel in North Bergen, New Jersey. (RA, Ex. E at 3.) Zamudio-Berges, Gil, Rocha, and the two minivans were taken to the DEA's office in Manhattan. (RA, Ex. A ¶ 10.) Agents set off a car alarm when they attempted to drive the green minivan, and Zamudio-Berges showed them how to turn off the alarm. (RA, Ex. H ("Suppression Hr'g Tr.")

at 48, 64.)

On May 3, 2002, law enforcement officers obtained a warrant to search a Dell laptop computer that had been recovered from Zamudio-Berges's room at the Days Inn, and found computer files that contained scanned images of a variety of Mexican and American immigration and identification documents. (*See* RA, Exs. B at 4, F.)  Following his arrest, Zamudio-Berges made several statements in which he told agents that he had been contacted by a woman in Florida, who told him to travel to New York to pick up "5," which he understood to mean either 5, 50, or 500 kilograms of cocaine. (RA, Ex. A ¶ 11.)  He stated that he was expecting a phone call from the person whom he was to get the drugs from "later that afternoon." (*Id.*)  After receiving his consent to record incoming calls to his cell phone, DEA agents recorded an unidentified male asking Zamudio-Berges about "windows," and Zamudio-Berges replying that he was busy and had been to the "hospital." (*See* RA, Ex. C.)  Zamudio-Berges later told the agents that he and the caller had been speaking in code, and that he had informed the caller that he had been arrested. (*See* RA, Ex. D at 3.)  He also admitted that he was in the United States unlawfully. (RA, Ex. A ¶ 11.)

**B. The Suppression Hearing**

Zamudio-Berges's counsel filed a suppression motion, contending that law enforcement officials did not provide Zamudio-Berges with *Miranda* warnings prior to his statements, that they did not have probable cause to arrest him, and that the evidence gained from the illegal arrest should be suppressed.  The court denied the motion at a hearing on April 14, 2002, after determining that Zamudio-Berges had been given his *Miranda* warnings in Spanish prior to his statements. (Suppression Hr'g Tr. at 42-43.)  The court further determined that the agents had probable cause to stop and arrest him based, in part, upon the corroborated informant's tip,

Zamudio-Berges's "counter-surveillance-type driving," and the agents discovery that one of the minivans did not have valid license plates. (Suppression Hr'g Tr. at 61-65.) The court set a trial date for August 5, 2002.

## C. The Guilty Plea

A few days before the trial was set to begin, the Government requested an adjournment in order to attempt to negotiate a plea so that the CW's identity would not have to be revealed. On April 16, 2003, after a series of adjournments, Zamudio-Berges ultimately pled guilty without the benefit of a plea agreement. (*See* RA, Ex. I ("Plea Tr.").)

Prior to his plea, the Government provided Zamudio-Berges with a letter that set forth its anticipated position on the application of the United States Sentencing Guidelines to his case. (*See* RA, Ex. J.) The Government calculated an offense level of 43, which included a base offense level of 36, plus enhancements because Zamudio-Berges had (1) possessed a dangerous weapon, (2) been the supervisor of a criminal activity, and (3) willfully attempted to obstruct justice. (*Id.* at 2.) The Government informed Zamudio-Berges that it would oppose granting him credit for acceptance of responsibility because he had obstructed justice. (*Id.*) Based on his offense level, the Government told Zamudio-Berges that he faced a sentencing range of up to life imprisonment. (*Id.* at 2-3.)

At the hearing, Zamudio-Berges stated that he had read and reviewed the information, and that his attorney had explained the charges against him. (Plea Tr. at 4.) He stated that he had not been induced to plead guilty by any threats or promises, and that he understood he had a right to plead not guilty and proceed to a jury trial where his guilt would have to be proven beyond a reasonable doubt. (Plea Tr. at 5-7.) He told the court that he understood the rights he would be waiving, and that he was aware that he could receive a maximum sentence of life

4

imprisonment.  (Plea Tr. at 6-10.)

During the allocution, Zamudio-Berges admitted that he had made an agreement with another person to pick up and deliver five or more kilograms of cocaine.  (Plea Tr. at 10-12.)  He also acknowledged that there had been more than two people involved in the plan.  (Plea Tr. at 11.)

**D. Sentencing**

In connection with sentencing, the Probation Office prepared a Presentence Investigation Report that calculated a total offense level of 38.  (RA, Ex. A ¶ 30.)  The report assigned a base level of 36, and found that the base level should be increased by two levels because Zamudio-Berges possessed a firearm, and by another two levels because he was the supervisor of Gil and Rocha.  (*Id.* ¶¶ 20-22.)  The report recommended a two-level reduction because Zamudio-Berges accepted responsibility, but recommend against an additional one-level reduction because his plea was not timely.  (*Id.* ¶ 27.)

Zamudio-Berges initially sought a base offense level of 32, arguing that the offense only involved the attempt to distribute five kilograms of cocaine.  (*See* RA, Ex. K.)  He argued that he was entitled to downward adjustment for safety-valve relief and a downward departure based upon his extraordinary cooperation.  (*Id.*)  The Government asked the court to impose a life sentence, and argued that Zamudio-Berges was not entitled to safety-valve relief because he possessed a firearm and never proffered to the Government the full extent of his involvement in the conspiracy.  (*See* RA, Ex. B.)  Zamudio-Berges filed a response on April 21, 2005, in which he did not challenge the computation of his base offense level at 36, based on the weight of the drugs.  (RA, Ex. L at 2.)  Zamudio-Berges contended, however, that his base offense level should be capped at 30 because he played a minor role in the offense and was not aware of the

firearms in the green minivan. (*Id.*) He argued that he was entitled to an offense level of 24, taking into account two-level reductions for his role in the offense, his acceptance of responsibility, and safety-valve relief. (*Id.* at 3.)

Zamudio-Berges appeared for a safety-valve proffer with the Government on June 1, 2005, at which he gave an account of his drug-dealing activity. (*See* RA, Ex. D.) Among other things, he proffered that he drove to New York with Gil and Rocha to pick up fifty kilograms of drugs, that he initially lied to the police about who had sent him to do the drug deal, and that he purposefully tipped-off a co-conspirator that he was in police custody. (*Id.*) He also stated that this was the first time he had been involved in trafficking drugs, and that he had entered the United States with false documents with the intention of purchasing counterfeit merchandise. (*Id.*) In response to Zamudio-Berges's proffer, the Government submitted a sentencing letter in which it characterized some of his statements as "contradictory" and "incredible," and asked the court to deny safety-valve relief. (RA, Ex. M.)

On July 14, 2005, Zamudio-Berges appeared for sentencing. (RA, Ex. N. ("Sent. Tr.").) The court determined a base offense level of 36, as agreed upon by the parties. (Sent. Tr. at 28.) After hearing argument, and over the objections of Zamudio-Berges's counsel, the court imposed two-level enhancements for his use of firearms (Sent. Tr. at 11), his obstruction of justice (Sent. Tr. at 22), and his role in the offense (Sent. Tr. at 17-18). Accordingly, Zamudio-Berges was given an offense level of 42 and a Criminal History Category of I, resulting in a Guidelines range of 360 months to life imprisonment. (Sent. Tr. at 29-30.) The court sentenced Zamudio-Berges to 360 months' imprisonment, followed by a period of five years of supervised release. (Sent. Tr. at 36.)

6

### E. Direct Appeal

On appeal, Zamudio-Berges challenged his sentence on the grounds that (1) it was unconstitutional because it exceeded the statutory maximum penalty based on facts that he did not admit, and that were not found by a jury beyond a reasonable doubt, and (2) it was substantively unreasonable. (*See* RA, Ex. O at 12-23.) On June 14, 2007, the Second Circuit rejected his arguments and affirmed his sentence. *United States v. Zamudio-Berges*, 226 Fed. Appx. 56 (2d Cir. 2007). His conviction became final when the United States Supreme Court denied his petition for a writ of certiorari on October 9, 2007. *United States v. Zamudio-Berges*, 552 U.S. 971 (2007).

### F. Zamudio-Berges's §2255 Motion

Zamudio-Berges's § 2255 motion was signed on September 16, 2008, was received by the *Pro Se* Office of this District on September 25, 2008, and asserts a multitude of claims.[1] He claims that the evidence obtained from his arrest should have been suppressed because the police lacked probable cause to arrest him, and that his statements should have been suppressed because the police did not give him *Miranda* warnings. (Mot. at 1-41, 43-68.) He further claims that he was denied his rights to be informed of the charges he faced (*id.* at 80), to be charged on an indictment (*id.* at 43), to due process (*id.* at 68), to a trial by jury (*id.* at 69), to a speedy trial (*id.* at 70-72), to compulsory process (*id.* at 80), to confront witnesses (*id.* at 80), and to proceed *pro se* (*id.* at 98). He further contends that his sentence was imposed in violation of the United States Sentencing Guidelines (*id.* at 102-84), that the court lacked jurisdiction to enter judgment and sentence (*id.* at 185-213), and that his sentence exceeded the maximum punishment

---

[1] Since Zamudio-Berges is a *pro se* litigant, the Court has attempted to construe all of his claims in the light most favorable to him. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

authorized by law (*id.* at 214-17). He challenges his guilty plea on the grounds that he did not knowingly waive indictment to the charges (*id.* at 218-20), and that the plea was not knowing and voluntary (*id.* at 221-22). He claims that he received ineffective assistance of counsel at all phases of the proceedings. (*Id.* at 82-101.) Finally, Zamudio-Berges argues that his sentence should be vacated based on the Government's actions that thwarted his cooperation (*id.* at 223-49), and based on the cumulative effect of all the errors made in the proceedings (*id.* at 250).

## III. DISCUSSION

### A. Section 2255 Standard

Section 2255 allows a convicted person held in federal custody to move the sentencing court to vacate, set aside, or correct a sentence. To prevail on a § 2255 claim, a movant must show that (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. "Relief under section 2255 is therefore only available to remedy 'a constitutional error, a lack of jurisdiction in the sentencing court or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Castellanos v. United States*, 06 Civ. 7773, 2008 WL 4548916, at *3 (S.D.N.Y. Oct. 8, 2008) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

### B. Zamudio-Berges's Claims Regarding His Arrest, Prosecution, and Guilty Plea

Zamudio-Berges's claims relating to his arrest, post-arrest statements, denial of trial rights, and guilty plea (*see* Mot. 1-98, 221-49) are procedurally barred and were waived as a

8

result of his valid and unconditional guilty plea, and the Court recommends that they be

**DENIED.**

### 1. The Claims Are Procedurally Barred

A defendant may be barred from raising claims in a § 2255 motion that he failed to raise on direct appeal unless he can show cause for the omission and prejudice resulting therefrom. *United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). Here, Zamudio-Berges only asserted two challenges to his sentence on direct appeal, and did not challenge his arrest, guilty plea, or the denial of various trial rights. The latter claims are therefore procedurally barred.

Zamudio-Berges argues that he failed to raise the claims because he received ineffective assistance of counsel. Ineffective assistance of counsel may constitute "cause" for a procedural default only if the assistance was so ineffective that it violated the Constitution. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). As will be discussed below, Zamudio-Berges cannot establish that the performance of his counsel was constitutionally deficient, and, therefore, ineffective assistance of counsel does not constitute cause excusing his procedural default. (*See* Section III(D).)

### 2. The Claims Are Waived Because of Zamudio-Berges's Guilty Plea

It is well-settled that "a defendant who knowingly and voluntarily enters into a guilty plea waives all nonjurisdictional defects in the prior proceedings." *Lebowitz v. United States*, 877 F.2d 207, 209 (2d Cir. 1989). *Accord United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) ("[A] guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]") To reserve an issue for appeal

after a guilty plea, "a defendant must obtain the approval of the court and the consent of the government, and he must reserve the right to appeal in writing." *United States v. Cabrera*, 379 Fed. Appx. 24, 26 (2d Cir. 2010) (quoting *United States v. Coffin*, 76 F.3d 494, 496 (2d Cir. 1996)); Fed. R. Crim. P. 11(a)(2). Zamudio-Berges did not reserve any issues for appeal following his guilty plea, and, as a result, waived any nonjurisdictional challenges to defects in prior proceedings.

Zamudio-Berges argues that he did not waive his claims because his guilty plea was not valid because (i) the court lacked jurisdiction over the proceedings (Mot. at 185-213) and (ii) the plea was not knowing and voluntary (*id.* at 221-22). Both arguments are meritless.

### a. The Court Had Jurisdiction To Enter Judgment

Zamudio-Berges challenges the court's jurisdiction on a number of grounds. He argues that the court lacked jurisdiction because he was not indicted by a grand jury. (*See* Mot. at 185-89.) He also argues that the court did not exercise its jurisdiction within time limits (*id.* at 189-90), that the charges do not constitute an offense under the laws of the United States (*id.* at 190-92), that the court lacked jurisdiction because he was not tried by a jury (*id.* at 192-99), and there was no genuine case or controversy (*id.* at 210). Zamudio-Berges further argues that Title 21 is unconstitutional because Congress did not have the authority to enact it pursuant to the Commerce Clause (*id.* at 197-200, 208-13), and that the provision is otherwise not applicable to him because he is not a person within the meaning of 21 U.S.C. §§ 801 *et seq.* (*id.* at 200-07).

"In order to sustain a challenge to the district court's jurisdiction, the defendant who has pleaded guilty must establish that the face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a federal offense." *Hayle v. United States*, 815 F.2d

10

879, 881-82 (2d Cir. 1987).  In this case, Zamudio-Berges's information[2] clearly stated a constitutional federal offense.  *See United States v. Beatty*, No. 94 Cr. 631, 1996 WL 308677, at *4 (S.D.N.Y. June 7, 1996) (holding that 21 U.S.C. § 841(a) was a valid exercise of Congress's power under the Commerce Clause).  He was charged with one count of conspiracy to distribute five kilograms and more of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A). (Doc. No. 24.)  The court therefore had jurisdiction to enter judgment against him.

### b. Zamudio-Berges's Plea Was Knowing and Voluntary

A guilty plea is only constitutionally valid if it is voluntary and intelligent, *Bousley v. United States*, 523 U.S. 614, 618 (1998), that is, the defendant enters the plea with "full awareness of its direct consequences." *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  The Second Circuit has explained that direct consequences are those that have a "definite, immediate and largely automatic effect on the range of a defendant's punishment." *Id.*, at 200 (quoting *United States v. U.S. Currency*, 895 F.2d 908, 915 (2d Cir. 1990).  Zamudio-Berges contends that his plea was not knowing and voluntary because he was not informed by his counsel or the court that he was waiving the right to collaterally attack his arrest and pre-plea proceedings.  (Mot. at 84.)

The Court finds that Zamudio-Berges's guilty plea was both knowing and voluntary. Prior to his plea, he informed the court that he understood the nature of the charges against him, the trial rights he would be relinquishing, and the potential penalties he faced.  (Plea Tr. at 4-10.) He stated that he was not induced to enter his plea "as a result of fear, pressure, threat, or force

---

[2] Zamudio-Berges waived indictment, and an information was filed against him on July 31, 2001. (*See* Doc. No. 22.)  During his plea hearing, he confirmed that he had waived his right to have his case presented to a grand jury for indictment. (Plea Tr. at 7.)

of any kind," or by promises of special treatment or leniency. (Plea Tr. at 5.) He responded

affirmatively when the court asked if he was satisfied by the representation provided by his

counsel. (Plea Tr. at 10.)

Although the court never explicitly asked him whether he understood that accepting the

plea without reserving an issue for appeal served to waive his right to appeal that issue, the court

was not required to make such an inquiry. *See* Fed. R. Crim. P. 11(b). Although district courts

are required to ascertain "whether a waiver of the right to appeal a *sentence*–a waiver that is

*prospective* in nature–is fully understood by a criminal defendant," the Second Circuit has never

required "that defendants be informed that by pleading guilty they waive the right to appeal

defects in the *prior* proceedings." *United States v. Cabrera*, 379 Fed. Appx. 24, 26 (2d Cir.

2010) (emphasis in original). Moreover, even if Zamudio-Berges's trial counsel did not inform

him that his guilty plea would waive his right to make certain collateral challenges to his

conviction,[3] conscious waiver is not necessary with respect to every potential defense

relinquished by a guilty plea. *See, e.g., United States v. Broce*, 488 U.S. 563, 573 (1989);

*Cabrera*, 379 Fed. Appx. at 27 (holding that defendant waived his speedy presentment claims

even though he was not explicitly informed of that consequence when he pled guilty); *United*

*States v. Vasquez-Martinez*, 616 F.3d 600, 605 (6th Cir. 2010) (same with regard to the waiver of

defendant's right to appeal a pre-plea denial of a suppression motion). Accordingly, the Court

finds that Zamudio-Berges's guilty plea was voluntary and knowing, even assuming that he did

---

[3] There is a disagreement about whether Zamudio-Berges's counsel informed him about certain consequences of his guilty plea. His counsel at the plea hearing, Alan Seidler, states that he discussed the consequences of his plea with Zamudio-Berges, including the fact that he would be unable to challenge the circumstances surrounding his arrest or post-arrest statements. (RA, Ex. P. ("Seidler Affirm.") ¶ 6.) Zamudio-Berges contends that Seidler never told him the effect his guilty plea would have on his ability to make certain collateral challenges to his conviction on appeal. (Zamudio-Berges's Reply Affirm. in Supp. of § 2255 Mot. ("Zamudio-Berges Affirm.") at 6-8.)

not understand certain collateral consequences of the plea on his ability to challenge the denial of

his suppression motion and other pre-plea proceedings.

## C. Zamudio-Berges's Claims Relating To His Sentence

Zamudio-Berges challenges his sentence on the grounds that (i) it was erroneous under

the United States Sentencing Guidelines (Mot. at 102-74), (ii) the court lacked jurisdiction to

enter the sentence (*id.* at 185-213), and (iii) the sentence exceeded the maximum punishment

authorized by law[4] (*id.* at 214-20).

### 1. Zamudio-Berges's Claims That His Sentence Was Erroneous Under the Guidelines and Exceeded the Maximum Punishment Are Procedurally Barred

Zamudio-Berges concedes that he did not raise any of his current challenges to his

sentence on direct appeal.[5] (*See* Mot. at 102, 111, 122, 134, 153, 168, 171, 172, 174).  The Court

therefore recommends that his claims that his sentence was (1) erroneous under the Guidelines

and (2) exceeded the maximum punishment provided by law be **DENIED** as procedurally

barred.  *See Perez*, 229 F.3d at 260.

As discussed below, Zamudio-Berges's appellate counsel was not ineffective, and

therefore his counsel's failure to raise the issues on appeal does not constitute cause sufficient to

excuse Zamudio-Berges's procedural default.  (*See* Section III(D)(4).)  To the extent that

Zamudio-Berges's claims could be interpreted as being raised in his direct appeal claim that his

---

[4] In this claim, Zamudio-Berges argues that he only waived indictment, that judgment was entered against him on a single count of violating 21 U.S.C. § 846, and that his sentence could not exceed statutory maximum of one year imprisonment with respect to violating that section.  (Mot. at 214-15.)  Zamudio-Berges is mistaken.  The information charges him with violations of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and judgment was properly entered against him for violating those provisions.

[5] Although Zamudio-Berges does not explicitly concede his failure to raise his claim regarding the court's failure to reduce his sentence based on his acceptance of responsibility (*see* Mot. at 141), the claim was not in fact raised on direct appeal, and is procedurally barred.

13

sentence was substantively unreasonable, the claims are meritless. As the Second Circuit previously decided, Zamudio-Berges's sentence represented "the bottom of the properly-calculated guidelines," and was not substantively unreasonable. *United States v. Zamudio-Berges*, 226 Fed. Appx. 56, 57 (2d Cir. 2007).

### 2. Zamudio-Berges's Claims That the Court Did Not Have Jurisdiction To Impose the Sentence Are Meritless

As discussed above, Zamudio-Berges challenged the court's jurisdiction to enter judgment against him on a variety of grounds. (*See* Section III(B)(2)(a).) For the same reasons that the court had jurisdiction to accept his plea, the court also had jurisdiction to impose his sentence. Accordingly, Zamudio-Berges's claims that the court lacked jurisdiction to impose the sentence against him is meritless, and the Court recommends that the claims be **DENIED**.

### D. Zamudio-Berges's Ineffective Assistance of Counsel Claims

Zamudio-Berges contends that he received ineffective assistance of counsel during his pre-plea proceedings (Mot. at 11-80), his plea negotiations (*id.* at 85-95), his plea allocution (*id.* at 84), his sentencing (*id.* at 102-75), and his direct appeal (*id.* at 96-97). Generally, to prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must "show that trial counsel's performance was deficient." *Id.* at 687. There is a strong presumption that counsel's conduct was reasonable, and a defendant must establish that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and circumstances. *Id.* at 688-89. Second, the petitioner "must show that the deficient performance prejudiced the defense." *Id.* at 687. This requires a showing "that there is a reasonable

14

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 1. Zamudio-Berges's Claims Regarding His Counsel's Performance at Pre-Plea Proceedings Are Waived and Meritless

Zamudio-Berges asserts that he was provided ineffective assistance of counsel at pre-plea proceedings primarily because his counsel failed to fully present arguments at his suppression hearing and failed to challenge his prosecution on speedy trial grounds. (*See* Mot. at 11-80.) A defendant's unconditional guilty plea waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of his plea. *See Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *United States v. Coffin,* 76 F.3d 494, 498 (2d Cir. 1996); *United States v. Parisi,* 529 F.3d 134, 138-39 (2d Cir. 2008). Here, Zamudio-Berges does not contend that his counsel's performance at the suppression hearing and other pre-plea proceedings affected the voluntariness of his plea. Accordingly, the claims are waived. Even if the Court were to conclude that his claims regarding his counsel's performance were not waived, the claims are meritless.

### a. Zamudio-Berges's Claim Regarding Counsel's Performance at His Suppression Hearing Is Meritless

Zamudio-Berges contends that he received ineffective assistance of counsel, in part, because his counsel failed to fully present arguments challenging his arrest, evidence obtained in connection with his arrest, and his post-arrest statements. (Mot. at 11-69.) The claim is meritless. Zamudio-Berges's second attorney, Stewart Orden, moved to suppress the evidence obtained after his arrest and to suppress his post-arrest statements, and the court held a suppression hearing to evaluate the evidence. At that hearing, counsel argued that the police did

15

not have sufficient cause to stop Zamudio-Berges's car, that he was arrested at the time his car was stopped, and that the police did not have probable cause to arrest him at that moment. (Suppression Hr'g Tr. at 6.)  Counsel cross-examined a DEA agent who interviewed Zamudio-Berges, and attempted to establish that the agent failed to fully advise Zamudio-Berges of his *Miranda* rights.  (*See* Suppression Hr'g Tr. at 23-36.)  Although the motion was ultimately denied, counsel's performance was not objectively unreasonable.  He competently raised, and vigorously argued, a number of challenges to the arrest and post-arrest statements.

Moreover, the evidence presented at the suppression hearing strongly supported the denial of Zamudio-Berges's motion, and he has failed to demonstrate what Orden could have done to achieve a different result.  The police had probable cause to stop him based upon the corroborated tip provided by the CW and the fact that one of the minivans he was traveling with did not have valid license plates.  (*See* Suppression Hr'g Tr. at 61-65.)  Law enforcement officials had probable cause to arrest Zamudio-Berges when they discovered he had fraudulent travel documents and weapons in a minivan for which he was able to show DEA agents how to turn off a car alarm.  (*See* Suppression Hr'g Tr. at 61-65.)  After hearing testimony from the officer who interrogated Zamudio-Berges, the court concluded that Zamudio-Berges had been provided his *Miranda* warnings before he gave his statements.  (*See* Suppression Hr'g Tr. at 42-43.)  Accordingly, even if deficient performance were presumed, Zamudio-Berges has failed to show that he was prejudiced because he has failed to demonstrate that the evidence obtained in connection to his arrest would have been suppressed.

**b. Zamudio-Berges's Claim That Counsel Failed To Protect His Speedy Trial Rights Is Meritless**

Zamudio-Berges contends that his attorneys were ineffective because they failed to protect his right to a speedy trial, both before and after the Government filed the information. (Mot. at 70-80.) This claim is meritless. Zamudio-Berges was arrested on May 1, 2001, and the time to file an indictment or information was continued twice in the interests of justice until August 1, 2001.[6] (*See* Doc. No. 5; Docket Entry dated July 2, 2001.) He waived indictment, and the information was timely filed on July 31, 2001.[7] (*See* Doc. Nos. 22, 24.) Accordingly, the information was filed within the time allotted pursuant to 18 U.S.C. § 3161, and Zamudio-Berges's counsel's decision not to challenge the timing was reasonable.

Zamudio-Berges contends that his counsel was ineffective following the filing of the information because of "extreme" delays that violated his speedy trial rights. (Mot. at 72.) First, Zamudio-Berges argues that over seventy days elapsed between October 9, 2001, and January 7, 2002. (*Id.* at 72-73.) The speedy trial clock, however, was stopped from October 9, 2001, to November 20, 2001, and from December 3, 2001, to January 7, 2002. (*See* Docket Entry dated Oct. 9, 2001; Doc. No. 28.) Therefore, only thirteen days elapsed during this period for speedy trial purposes.

---

[6] Zamudio-Berges contends that the continuances are not valid because they were not filed on the record, and that, even if they were, the information was due on July 30, 2001. (Mot. at 71.) He is mistaken. Both continuances were entered on the docket sheet, and his information was due on August 1, 2001. (*See* Doc. No. 5; Docket Entry dated July 2, 2001.)

[7] Zamudio-Berges contends that the information was filed on August 7, 2001. (Mot. at 71.) He is mistaken. The information appears to have been microfilmed on August 7, 2001, but it was filed on July 31, 2001. (Doc. No. 24.) Zamudio-Berges also contends that he did not waive indictment until August 7, 2001. (Zamudio-Berges's Reply to Government's Opposition at 28.) Although his waiver of indictment was entered on the docket sheet on August 7, 2001, Zamudio-Berges waived indictment on July 31, 2001. (Doc. No. 22.)

17

Second, Zamudio-Berges argues that his speedy trial rights were violated because he fired his counsel on June 14, 2002, and was without counsel until September 4, 2002.[8] (Zamudio-Berges's Reply to Government's Opposition ("Reply") at 29.)  However, the speedy trial clock was properly stopped twice during this period, and Zamudio-Berges's decision to terminate his attorney did not restart the clock.  First, without objection from either party, the court excluded the time between the May 14, 2002[9] suppression hearing and Zamudio-Berges's August 5, 2002 trial date to provide time for trial preparation.  (Suppression Hr'g Tr. at 67; Docket Entry dated May 14, 2002.)  The trial was adjourned to allow the parties to discuss a plea bargain, and the court excluded the time again between August 13, 2002, and September 23, 2002, the new trial date.  (Doc. No. 42.)  In sum, only eight days elapsed for speedy trial purposes between June 14, 2002, and September 4, 2002.

Finally, Zamudio-Berges asserts that his speedy trial rights were violated during the period from September 4, 2002, to April 16, 2003, the date he pled guilty.  (Reply at 30.) Although he concedes that the time during this period was excluded for either trial preparation or plea negotiations, he argues that the time was not used for those purposes and should not have been excluded.  (*See* Mot. at 75-79.)  The speedy trial clock was stopped on September 4, 2002,

---

[8] It appears that Zamudio-Berges sent Orden a letter in June 2002, in which he asked Orden to cease representing him.  (*See* RA, Ex. T at 2-3.)  At a pretrial conference on September 4, 2002, Orden indicated that he had not received the letter, and that he had been functioning as Zamudio-Berges's attorney since he was retained. (*See id.*)  Orden noted, however, that, based upon the letter shown to him by the court, he had no doubt that Zamudio-Berges believed that he had relieved Orden in June 2002.  (*See id.* at 3.)  After Orden confirmed that Zamudio-Berges wanted him relieved as counsel, the Court granted the application, and replaced Orden with George Goltzer.  (*See* RA, Ex. T at 7; Doc. No. 43)

[9] There is an inconsistency between the docket sheet and the suppression hearing transcript regarding when the hearing occurred.  According to the docket sheet, the hearing occurred on May 14, 2002.  (*See* Docket Entry dated May 14, 2002.)  According to the transcript, the hearing occurred on April 14, 2002.  (*See* Suppression Hr'g Tr.)  This inconsistency does not alter the Court's analysis because the speedy trial clock was stopped from the date of the hearing to August 5, 2002.

18

to allow new defense counsel to become familiar with the case. (RA, Ex. T at 9-10.) On October 10, 2002, the court set a January 21, 2003 trial date, and the speedy trial clock was ordered stopped until that date. (*See* Docket Entry dated Oct. 11, 2002.) At a pretrial conference on January 21, 2003, the court granted a brief continuance and ordered the time to be excluded until January 29, 2003, based on defense counsel's representation that he needed more time to discuss a plea offer with Zamudio-Berges. (RA, Ex. U at 2.) The court ordered the time excluded between January 30, 2003, and January 31, 2003, so only one day elapsed for speedy trial purposes during January 2003. (*See* Docket Entry dated Jan. 30, 2003.) On January 31, 2003, the court granted the Government's request to exclude time until May 12, 2003, the scheduled trial date, "[i]n order to accommodate [defense] counsel's trial schedule, to permit continuity of counsel, and to permit Mr. Zamudio-Berges to confer with counsel at greater length with respect to some other plea . . . ." (RA, Ex. V. at 5.)

Based on the foregoing, the Court finds that Zamudio-Berges's speedy trial act rights were not violated. Between the filing of the information and Zamudio-Berges's plea, a total of twenty-two days of non-excluded time elapsed. The court reasonably excluded time to allow the parties to file motions, to prepare for trial, and to discuss a plea. Accordingly, Zamudio-Berges was not prejudiced by his counsel's decision not to challenge his charges on speedy trial grounds. *See United States v. Gomez*, 644 F. Supp. 2d 362, 369 (S.D.N.Y. 2009) (holding that counsel's failure to make a speedy trial motion that would have been unsuccessful does not constitute ineffective assistance); *Boyd v. Hawk*, 965 F. Supp. 443, 450 (S.D.N.Y. 1997).

19

### 2. Zamudio-Berges's Claim Regarding Counsel's Performance During Plea Negotiations Is Meritless

The *Strickland* standard is applicable to the performance of counsel during plea negotiations. *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996). An attorney must convey plea offers to a defendant and "give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty." *Id.* To show prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2002) (per curiam).

Zamudio-Berges contends that the four attorneys who represented him at different times during his plea negotiations were ineffective because (i) a favorable plea deal offered prior to his arraignment was not consummated; (ii) the favorable plea deal was not revived following a suppression motion; and (iii) he was not advised of the consequences of a guilty plea on his ability to challenge pre-plea proceedings on appeal. (*See* Mot. at 85-95.)

Zamudio-Berges contends that his first attorney, Robert A. Novelle, was ineffective because he failed to consummate a plea agreement that would have resulted in him receiving a 70-month sentence, and would have required him to serve only 44 months after deductions were made for sentencing departures. (Mot. at 87-88.) Zamudio-Berges claims that he accepted the offer, and that it was supposed to have been entered at his arraignment. (*Id.*) The evidence before the Court indicates that such an offer was never made. The only evidence that supports the existence of anything resembling such an offer is Zamudio-Berges's statement that Novelle had told him that he had discussed with the Government a plea offer in the "range" of seventy to eighty-seven months. (Zamudio-Berges's Affirm. at 1-2.) Novelle denies that the Government

20

made a plea offer. (*See* RA, Ex. Q, ("Novelle Affirm.") ¶ 6.) Moreover, the Government never
stated that an offer was made prior to the arraignment, and only informed the court that the
parties "had begun to discuss a potential resolution of this case." (RA, Ex. R at 4.) Even if such
an offer had been made, however, Zamudio-Berges presents no evidence that he would have
accepted a plea at that time. To the contrary, Novelle advised Zamudi-Berges that a plea offer
was his best course of action, and he was ultimately fired because Zamudio-Berges thought he
was too interested in pursuing a plea. (*See* Novelle Affirm. ¶ 7; Zamudio-Berges Affirm. at 2.)

Zamudio-Berges contends that his second attorney, Stewart Orden, was ineffective
because counsel advised him to reject the Government's plea offer and to pursue a suppression
motion instead. (Mot. at 90-91.) Zamudio-Berges contends that Orden told him that he would
win the suppression hearing, and that Zamudio-Berges would be released "in two months." (*Id.*
at 90.) Shortly before the suppression hearing, Zamudio-Berges alleges that the Government
offered a plea agreement that would have resulted in him serving 57 months in prison, and that
Orden again instructed him to not take it. (*Id.* at 91.) Zamudio-Berges states that if he had been
properly advised about the likelihood of succeeding at the suppression hearing, he would have
accepted the Government's offer. (*Id.*) The Government states it never made such an offer
during plea discussions before or after the suppression hearing. (*See* Affirm. of Glenn Kopp ¶
3.) Moreover, Orden does not recall the Government making a plea offer, and states that he
would have discussed the merits of such an offer with Zamudio-Berges. (Orden Affirm. ¶ 8.)
He states that he discussed the strengths and weaknesses of pursuing a suppression motion with
Zamudio-Berges, and that he never assured Zamudio-Berges that he would win the motion. (*See*

Orden Affirm. ¶¶ 6-7.)[10]  Because Zamudio-Berges has failed to establish that the Government

ever made a plea offer to Orden, the Court finds that Orden was not ineffective for failing to

advise Zamudio-Berges to take the purported offer.

Zamudio-Berges asserts that his third attorney, George Goltzer, was ineffective because

he failed to revive the Government's 70-month plea offer. (Mot. 93-94.)  Even assuming the

Government had made, and later had revoked, the alleged plea offer, Zamudio-Berges does not

indicate what Goltzer could have done to revive the offer.  Accordingly, the Court finds that

Zamudio-Berges has failed to establish that Goltzer's actions in failing to revive a purported plea

agreement were unreasonable, and that he was prejudiced as a result.

Zamudio-Berges contends that his fourth attorney, Seidler, was ineffective primarily

because he failed to advise him of the procedural consequences of his guilty plea.  (Mot. at 94-

95.)  He contends that if he had known that he would have been unable to appeal the denial of

his suppression motion, he would have made a conditional plea or would not have pled guilty.

(Zamudio-Berges Affirm. at 6-8.)  Although Zamudio-Berges denies that Seidler informed him

about the procedural consequences of the plea (*see* Seidler Affirm. ¶ 6; Zamudio-Berges Affirm.

at 6-8.), he does not claim that Seidler misinformed him about the collateral consequences of the

plea.  Rather, Zamudio-Berges claims that Seidler simply never discussed with him the impact of

the plea on his ability to challenge pre-plea proceedings.  (*Id.*)  Even if Zamudio-Berges's

allegations are credited, he fails to establish that Seidler's performance was deficient.  Given

---

[10] The Court finds that while Zamudio-Berges gives the appearance of creating a factual dispute, his claims of a 57-month plea deal are simply implausible.  Under the applicable statutory provisions, Zamudio-Berges was subject to a mandatory minimum of 120 months imprisonment.  21 U.S.C. § 841(b)(1)(A).  He has failed to set forth facts which would relieve him from this provision.  Moreover, the Government indicates that a guideline calculation resulted in a range of 210 to 262 months.  His assertion that the Government offered him 57, or even 70, months in a plea agreement is not credible.  That facts indicate that the Government had a strong case and that his role in the offense was more than minor.

Zamudio-Berges's decision to plead guilty, it was not objectively unreasonable for Seidler to conclude that Zamudio-Berges did not want to challenge pre-plea proceedings. Accordingly, Seidler's alleged failure to advise Zamudio-Berges that the plea would waive his right to challenge pre-plea proceedings does not constitute deficient performance sufficient to satisfy the first prong of *Strickland*.

The Court notes that *Padilla v. Kentucky*, --- U.S. ----, 130 S.Ct. 1473 (2010), a case decided while this case was pending on appeal, does not mandate a different result. In *Padilla*, the Supreme Court held that failure to advise a defendant that a guilty plea made him subject to automatic deportation satisfied the deficient performance prong of *Strickland*. *Padilla*, 130 S.Ct. at 1483. In this case, Zamudio-Berges has never claimed that his counsel failed to advise him of the immigration consequences of his plea. Even if Zamudio-Berges were to make such a claim, however, his ineffective assistance of counsel claim would still fail. Unlike the defendant in *Padilla*, who was a lawful permanent resident of the United States for forty years, Zamudio-Berges admitted that he was in the United States illegally. Therefore, Zamudio-Berges did not have a legal immigration status that was at stake by the guilty plea, and cannot satisfy the prejudice prong of *Strickland* because he faced deportation regardless of whether he decided to plead guilty. Moreover, Zamudio-Berges has never indicated a desire to remain in the United States, and the Court finds that it is unlikely that being advised of the risk of deportation would have resulted in him refusing to plead guilty.

### 3. Zamudio-Berges's Claims Regarding Counsel's Performance at Sentencing Are Meritless

Zamudio-Berges contends that Seidler, who represented him at sentencing, was ineffective for a variety of reasons. (*See* Mot. at 102-11 (failure to object to a gun

23

enhancement); *id.* at 112-21 (failure to object to a role enhancement); *id.* at 122-33 (failure to rebut prosecutor's statements regarding an obstruction of justice enhancement); *id.* at 134-52 (failure to convince the court that a reduction for timely acceptance of responsibility was warranted); *id.* at 153-67 (failure to make arguments regarding the amount of cocaine he agreed to deliver); *id.* at 168-70 (failure to complete a timely safety valve proffer); *id.* at 171 (failure to convince the court that a reduction for his minor role in the offense was warranted); *id.* at 172-73 (failure to convince court that a reduction was warranted for extraordinary assistance); *id.* at 174-75 (failure to make other arguments regarding unwarranted enhancements to his sentence).)

Seidler's performance at sentencing, however, was not objectively unreasonable. In his sentencing letter, he argued that Zamudio-Berges deserved credit for making a safety valve proffer, accepting personal responsibility, and because he played a small role in the crime. (*See* RA, Ex. K at 1-2.) He also objected to an enhancement for gun possession, arguing Zamudio-Berges was not responsible for the weapons recovered in the minivan. (*See Id.*) He also objected to the Government's argument that Zamudio-Berges was responsible for trafficking more than five kilograms of cocaine. (*See Id.* at 2-3.) Seidler repeated these arguments at the sentencing hearing. (*See* Sent. Tr.) Although Seidler may not have raised the arguments in the exact way that Zamudio-Berges asserts they should have been raised, the arguments were competently raised, and Zamudio-Berges has not shown that a different approach would have resulted in a different sentence.

### 4. Zamudio-Berges's Claims Regarding the Performance of His Appellate Counsel Are Meritless

Although "the *Strickland* test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel."

24

*Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). In order to establish that appellate counsel's failure to raise a claim constitutes deficient performance, "it is not sufficient for the habeas petitioner to show that counsel omitted a nonfrivolous argument, for counsel does not have to advance every nonfrivolous argument that could be made." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Deficient performance of appellate counsel may be established by proof that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claims would have been successful before the state's highest court." *Id.* at 534 (quoting *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)).

Zamudio-Berges asserts that his appellate counsel, Seidler, was ineffective for failing to raise many of the claims raised in this Motion. (*See* Mot. at 96 (failure to raise all of the sentencing arguments raised during his sentencing hearing); *id.* (failure to challenge the court's Guidelines calculation); *id.* at 223-50 (failure to argue for a Guidelines departure on the grounds that Zamudio-Berges's attempts to cooperate were thwarted by the Government); *id.* at 97 (failure to argue that he was improperly sentenced based on facts that raised his statutory maximum without those facts having been proved beyond a reasonable doubt by the jury).)

On direct appeal, Seidler raised two claims: (1) that Zamudio-Berges's sentence was unconstitutional because it exceeded the statutory maximum penalty based on facts that he did not admit and that were not found by a jury beyond a reasonable doubt, and (2) that his sentence was substantively unreasonable. (*See* RA, Ex. O at 12-23.) Seidler did not have to raise every nonfrivolous claim on appeal, and his decision to raise only these claims was not objectively

25

unreasonable because Zamudio-Berges has failed to show that Seidler omitted any significant and obvious issues. *See Mayo*, 13 F.3d at 533. For instance, Zamudio-Berges fails to show how the court's calculation under the Guidelines was erroneous, and his argument that his attempts to cooperate were thwarted by the Government is meritless. Furthermore, he was sentenced based on the facts he admitted, and that were therefore deemed to be proven beyond a reasonable doubt. Accordingly, the Court finds that Zamudio-Berges did not receive ineffective assistance of appellate counsel.

In sum, the Court finds that Zamudio-Berges has failed to demonstrate that he received ineffective assistance of counsel at any stage of the proceedings against him, and the Court recommends that the claim be **DENIED**.

## F. Zamudio-Berges's Cumulative Error Claim

Zamudio-Berges's final claim is that, even if the Court were to find the individual errors were not prejudicial, the cumulative effect of all the errors prejudiced the outcome of his proceedings such that relief is warranted. (*See* Mot. at 250.) To the extent that this claim is cognizable, the Court finds it procedurally barred and meritless, and recommends that it be **DENIED**.

## G. Zamudio-Berges's Claims Can Be Resolved Without an Evidentiary Hearing

On a § 2255 motion, a court must hold an evidentiary hearing "[u]nless the motion and files and records of the case conclusively shows that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A hearing is required in cases where a petitioner has made a "plausible claim" of ineffective assistance of counsel. *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). An evidentiary hearing is not required, however, "when the allegations on a motion . . . merely

26

contradict the record, are inherently incredibly, or are simply conclusory." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992). Here, the files and records conclusively show that Zamudio-Berges is not entitled for relief. Zamudio-Berges fails to plead sufficient credible, non-conclusory facts that would entitle him to relief. Although there are factual disputes that involve matters that occurred outside the presence of a judge, affidavits from trial counsel have been submitted, and the disputes do not warrant an evidentiary hearing. *See Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) (holding that, in lieu of an evidentiary hearing, a district court could rely upon detailed affidavits from trial counsel that credibly describe circumstances concerning a petitioner's claims). For instance, Zamudio-Berges's allegations about a purported plea offer by the Government are unsupported by any objective evidence, and are directly contradicted by affidavits provided by counsel. Similarly, Zamudio-Berges's claim that he was not advised that his plea would waive his right to collaterally challenge pre-plea proceedings is directly contradicted by affidavits from trial counsel. Because the record contains evidence pertaining to Zamudio-Berges's off-the-record interactions with trial counsel, an evidentiary hearing "would not offer any reasonable chance of altering . . . the facts" and is therefore unnecessary. *Chang*, 250 F.3d at 86.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Zamudio-Berges's motion to vacate, set aside, or correct his sentence be **DENIED**

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of

the Court and served on all adversaries, with extra copies delivered to the chambers of the

Honorable Richard Owen, 500 Pearl Street, Room 2240, and to the chambers of the undersigned,

500 Pearl Street, Room 1970.  Failure to file timely objections shall constitute a waiver of those

objections both in the District Court and on later appeal to the United States Court of Appeals.

*See Thomas v. Arn*, 474 U.S. 140 U.S. 140, 150 (1985); *Small v. Sec'y Health and Human Servs.*,

892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed R

Civ. P. 72, 6(a), 6(d).

**Dated: November 4, 2011**                         **Respectfully Submitted,**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

Copies of this Report & Recommendation were sent to:
*Pro Se* Petitioner
Hiram Zamudio-Berges
45246-054
P.O. Box 23811
Tucson, AZ 85734


Counsel for Respondent
Glen Alexander Kopp
United States Attorney's Office
1 Saint Andrew's Plaza
New York, NY 10007

28